IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

RUBEN RAMIREZ,

        Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:21-cv-00169-MO

OPINION & ORDER

MOSMAN, J.,

    This matter comes before me on Plaintiff Ruben Ramirez's complaint [ECF 1] against Defendant Commissioner Social Security Administration. Ramirez petitions for review of the Commissioner's decision to deny him social security benefits. For the reasons given below, I AFFIRM the Commissioner's decision and DISMISS this case.

## BACKGROUND

    In February 2017, Ramirez filed an application for supplemental security income with the Social Security Administration (SSA). Admin. R. [ECF 32] (hereinafter "A.R.") at 200. The SSA denied the claim shortly thereafter. A.R. 102–113. Upon reconsideration a few months later, the SSA denied the claim again. A.R. 115–128. In May 2018, Ramirez requested a hearing before an administrative law judge (ALJ). A.R. 153. That hearing was held in Oakland, California in January 2019. A.R. 22. Two individuals testified: Ramirez and Linda Ferra, a vocational expert. *Id.*

The ALJ determined that Ramirez had not engaged in substantial gainful activity since applying for supplemental income and that Ramirez suffered from "major depressive disorder; generalized anxiety disorder; personality disorder; attention deficit hyperactivity disorder (ADHD); and Tourette's disorder." A.R. 24.

In evaluating medical opinion evidence, the ALJ gave "greatest weight" to a March 2018 opinion from Dr. Rahel Woldu, a pharmacist Ramirez saw for medication management, and opinions from nonexamining medical consultants. A.R. 28–29. These opinions describe Ramirez's limitations as mild to moderate. A.R. 463–465; A.R. 108–12, 122–27. The ALJ found them to be "consistent with the overall medical evidence of record," which "consistently shows relatively normal examinations except for periods of increased symptoms, typically when [Ramirez] was not adhering to treatment." A.R. 29.

In contrast, the ALJ gave "[l]ittle weight" to the opinions of examining psychologists Dr. Faith Tobias and Dr. Katherine Wiebe, which found Ramirez had marked limitations. A.R. 29; A.R. 329; A.R. 360. Likewise, the ALJ gave little weight to a February 2019 opinion from Dr. Woldu that also identified marked limitations. A.R. 29; 495–96. The ALJ found these opinions "overly restrictive and not consistent with the treatment notes, including Dr. Woldu's own treatment notes and prior opinion." A.R. 29. Against this background, the ALJ determined that Ramirez's conditions impose a "mild limitation" on his ability to understand, remember, or apply information, and a "moderate limitation" on his interactions with others, concentration, and self-management. A.R. 24–25.

Next, the ALJ found that Ramirez has the capacity to work in stable environments with limited interpersonal interaction. A.R. 25–29. Relying on Ferra's testimony, the ALJ determined Ramirez could be suited to working in several positions, including laundry laborer, kitchen helper,

and packing line worker. A.R. 30. As a result, the ALJ found that Ramirez was not disabled. A.R. 30.

Ramirez now petitions for district court review of the ALJ's decision under 42 U.S.C. § 405(g). Compl. [ECF 1] ¶ 1. This action was initially filed in the Northern District of California but was properly transferred to this district following Ramirez's relocation to Portland, Oregon. Order [ECF 16].

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation . . . the ALJ's conclusion . . . must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Ramirez raises two issues with the ALJ's decision. First, he contends that the ALJ failed to provide an adequate explanation for why he chose to give great weight to certain medical opinions and little weight to others. Mem. in Supp. [ECF 33] at 5. And second, Ramirez posits the ALJ failed to address statements from Ferra that an individual who regularly misses work and distracts co-workers would be unemployable. *Id.* I address each issue in turn.

I.  **Weighing of Medical Experts**

When determining how much weight to give a physician's opinion, ALJs look to the factors outlined in 20 C.F.R. § 404.1527(c). These factors identify three types of physicians. 20 C.F.R. § 404.1527(c)(1)–(2); *see also Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Treating physicians are "those who treat the claimant." *Garrison*, 759 F.3d at 1012. Examining physicians are "those who examine but do not treat the claimant." *Id.* And nonexamining physicians are "those who neither examine nor treat the claimant." *Id.* Generally, the opinions of treating physicians receive greater weight than those of examining physicians, which in turn receive greater weight than the opinions of non-examining physicians. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).

ALJs may only reject the opinion of a treating physician if they "provide specific and legitimate reasons for doing so that are supported by substantial evidence." *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020). This is true even if other evidence contradicts the treating physician's testimony. *Id.* In rejecting medical testimony, "[t]he ALJ must do more than state conclusions." *Garrison*, 759 F.3d at 1012 (internal quotation marks omitted). Rather, the ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (internal quotation marks omitted). This requires consideration of the factors set out in 20 C.F.R. § 404.1527(c)(2)–(6). *Ghanim*, 763 F.3d at 1161.

Ramirez contends that the ALJ failed to give specific and legitimate reasons for disregarding the opinions of Dr. Tobias, Dr. Wiebe, and Dr. Woldu. Mem. in Supp. of Pet. for Rev. [ECF 33] at 5–8. Indeed, the ALJ's reasoning for disregarding these testimonies is conclusory: rather than describe specific inconsistencies, the ALJ merely declares that the opinions are "overly restrictive and not consistent with the treatment notes." A.R. 29. In doing so, the ALJ

erred. *Garrison*, 759 F.3d at 1012–13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than . . . asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."). However, because the harmless error rule applies to social security disability determinations, an agency's decision explained "with less than ideal clarity" must still be upheld "if the agency's path may reasonably be discerned." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (internal quotation marks omitted).

Here, the ALJ's path is easily discernible. In a detailed review of the record, the ALJ found that Ramirez's "severe impairments cause no more than moderate limitations." A.R. 26. The treatment notes surveyed by the ALJ portray Ramirez as depressed and anxious but not debilitatingly so. *See, e.g.*, A.R. 315 (marking prognosis as "fair"); A.R. 319 (finding Ramirez was "[d]oing fair despite being out of medications"); A.R. 335 (marking judgment, insight, and attention as "good"); A.R. 336–37 (despite "poor" prognosis, Ramirez had a global assessment functioning score indicating moderate baseline symptoms); A.R. 440 (describing Ramirez's tics as "mild"); A.R. 463 (marking Ramirez's functional limitations as mild to moderate). The ALJ also found that Ramirez's activity, particularly taking a flight on his own to visit his long-distance girlfriend, supported a finding that his social limitations are no more than moderate. A.R. 28.

The ALJ's findings here are supported by the record and not clearly erroneous. Thus, substantial evidence supports his conclusion that record generally indicates that Ramirez's functional limitations were of mild to moderate severity. On the other hand, Dr. Tobias, Dr. Wiebe, and Dr. Woldu—in her February 2019 opinion—found that that Ramirez's limitations were marked. A.R. 329; A.R. 360; A.R. 496. Because these opinions are inconsistent with the ALJ's reasonable interpretation of the rest of the record, they are entitled to less weight. *See* 20 C.F.R.

§ 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that opinion.")

Dr. Woldu's February 2019 opinion is especially problematic because it reads as though Ramirez's symptoms have remained stable since his last evaluation. *See* A.R. 497 ("He continues with residual symptoms of depression and some social anxiety."). Yet in her assessment from three weeks prior, Dr. Woldu wrote that Ramirez had a fair prognosis, appropriate affect, normal speech, a linear thought process, good attention, good judgment, and good insight. A.R. 480–82. Dr. Woldu provided no explanation for her apparent change in diagnosis. *See* 20 C.F.R. § 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). The ALJ therefore reasonably found that Dr. Woldu's February 2019 assessment was inconsistent not only with the treatment record, but with her own prior assessments of Ramirez. A.R. 29.

Ramirez contends that the discounted opinions are consistent with the record. Mem. in Supp. of Pet. for Rev. [ECF 33] at 6–7. Though the discounted opinions are consistent with each other, they are not consistent with the entirety of the record. Some evidence supports a finding that Ramirez's limitations were marked. Other evidence supports a finding that his limitations were mild. Choosing one of these two reasonable interpretations of the record is not erroneous. *Burch*, 400 F.3d at 679.

Ramirez also claims that the ALJ failed to consider the "longitudinal medical record." Reply in Supp. of Pet. for Rev. [ECF 35] at 4. This is incorrect—the ALJ surveyed Ramirez's entire treatment record, tracing Ramirez's initial onset of depression in 2010 through Dr. Woldu's February 2019 evaluation. A.R. 27–28. Substantial evidence supports a finding of mild to moderate limitations at all times relevant to the record. Moreover, though Ramirez objects to the ALJ's

failure to mention Ramirez's occasional bouts with suicidal ideation, suicidal ideation does not preclude a finding of mild limitations. In fact, in her March 2018 assessment, Dr. Woldu acknowledged Ramirez's past suicidal ideation while nevertheless concluding his limitations were mild to moderate. A.R. 462–63.

Given the strength and consistency of the evidence that Ramirez's limitations were at most moderate in nature, I find that the ALJ reasonably determined that opinions inconsistent with the evidence were entitled to little weight. As a result, the ALJ's conclusory explanation of his reasoning is harmless error.

II.    **Consideration of Testimony on Importance of Regular Work Attendance**

At Ramirez's hearing, Linda Ferra, an impartial vocational expert, testified as to the kind of work an individual with Ramirez's conditions and experience could perform. A.R. 91–97. Ferra testified that employees who are absent from work more than once a month are generally "unemployable." A.R. 94. Ferra also testified that an individual who was off task 20% of the time and distracted co-workers from their tasks would "not be tolerated by [an] employer" and would eventually be let go. A.R. 95–96. Ramirez argues that the ALJ neglected to address these aspects of Ferra's testimony. Mem. in Supp. of Pet. for Rev. [ECF 33] at 8–10.

The Commissioner observes that the only evidence supporting Ramirez's contention that he could not regularly attend work or work without distracting others is the evidence that the ALJ properly discounted. Def.'s Br. in Resp. to Pet. for Rev. [ECF 34] at 5–6. The Commissioner is correct. To support his claim that he could not regularly attend work or stay on task, Ramirez relies on Dr. Tobias's evaluation, Dr. Woldu's February 2019 evaluation,[1] and his own testimony. Mem. in Supp. of Pet. for Rev. [ECF 33] at 10. As I concluded in the previous section, the ALJ reasonably

---

[1] Ramirez cites to A.R. 474 here, which is a simple prescription acknowledgement form. I presume he meant to cite to A.R. 497, which contains Dr. Woldu's prediction that Ramirez would often be absent or off task at work.

7 – OPINION & ORDER

gave little weight to Dr. Tobias's opinion and Dr. Woldu's February 2019 opinion. And Ramirez has not challenged the ALJ's determination that his testimony about his condition was inconsistent with the overall medical evidence. *See* A.R. 26.

True, some aspects of the record show that Ramirez often struggled to stick to a routine and maintain focus. A.R. 106–07 (describing Ramirez's difficulty attending school and taking medication consistently). But this evidence is not so strong as to compel me to find that Ramirez's self-management was so poor as to make him unemployable. As a result, I find that the ALJ did not err in omitting mention of the contested portion of Ferra's testimony.

## CONCLUSION

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this case with prejudice.

IT IS SO ORDERED.

DATED this 15 day of March, 2022.

MICHAEL W. MOSMAN
United States District Judge